Ms. Quick, when you are prepared, you may proceed. Good morning. May it please the court. I represent the defendant, Michael Bordman. Mr. Bordman pled guilty to sexual exploitation of a child in possession of child pornography. He was sentenced to 600 months of imprisonment to be followed by a 25-year term of supervised release. He raises several challenges to his sentence. Today, I will focus on his restitution challenge. The restitution order of $3,000 to the victim, Pia, was an abuse of discretion. The one-over-N method used by the prosecutor is inconsistent with the U.S. Supreme Court's directives in Paroline v. United States. Even if this mathematical formula were sometimes appropriate, its use here was inappropriate. And finally, the failure to disaggregate the harm caused by the initial abuse from the harm caused by the continued trafficking and possession of the images requires reversal for a new restitution hearing. Turning first, this circuit should reject the use of the one-over-N method in child pornography restitution cases. Paroline laid out several factors to be considered by district courts when attempting to determine the correct restitution amount. And what the U.S. Supreme Court didn't want was some hard-and-fast rule or equation to use in every single case. Instead, there are several factors that could be divided into two groups. The first group relates to more of who all is possessing and trafficking these images and how that defendant relates in the broader scheme of the harm caused by the continued trafficking and possession. The other factors focus on the defendant's specific conduct. How many images or videos did he possess? Did that defendant distribute or was that defendant involved in the initial production? While this court didn't want a hard-and-fast rule, the court was clear that district courts shouldn't convert these factors into a rigid formula. Was the one-over-N the only consideration the court used to reach the $3,000? I think it's hard to tell because the district court didn't say very much when granting the $3,000 in restitution. The court didn't discuss the factors at all. And so all we can go off of is the government's supplemental... Address them in the supplemental? Did the government address them in the supplemental sentencing memo? In a way, in that to get to the number, and I think it was around $2,800, the government used this equation. And then there's just a general listing of the factors. But there's no discussion about what, if any, impact those factors should have on the eventual number. And in the end just rounds up to $3,000, which is what is often done in these situations when the one-over-N method is used. Was $3,000 out of line with what's been in other cases? Yes, I believe so. And it's also hard to tell because even looking at the circuit's case law, I couldn't find any prior cases of PIA where this circuit has discussed restitution and whether it's appropriate. But looking at government's exhibits 3, and this is part of the problem with the one-over-N method, there's a discussion of different restitution amounts. Some are $500, some are $3,000 up to $5,000, but there's no indication of what the defendant's specific conduct was in those cases. It could be possible, and defendants more don't have a way to check because this information is sealed, it's possible that some of those defendants distributed and distributed a large number of images or videos, or maybe that defendant possessed a large number of videos, which is the major problem with this one-over-N method. It does not require district courts to take into account a defendant's specific conduct, which was the whole basis and the main point of the Paroline decision. Instead, it just boils it down to these simple mathematical formula, and there are three major problems with this formula. The first is, it's difficult to determine. At first glance, it seems like an easy solution and an easy way to determine a restitution amount, but as has been noted by other prosecutors and is illustrated by cases where restitution has been ordered in PIA, it's subject to error. It's hard to determine how many defendants have been previously ordered to pay restitution, and in this case, there's a discussion of other federal restitution orders, but there's no discussion of state cases, and a defendant likely doesn't have access to this information to confirm whether it's true or to see if other defendants have been ordered to pay restitution that have simply just been missed. It also, as I've stated, doesn't take into account a defendant's specific conduct, but most importantly, it's arbitrary, and that's illustrated by what happened here. When you're taking it just based off the number of defendants who have been ordered to pay restitution, it's completely based on when a defendant is convicted and sentenced. For example, here, nine different defendants were ordered to pay restitution in PIA's case in April of 2017 alone, so that means a defendant who is sentenced on April 1st has a completely different restitution order than a defendant who might be sentenced on April 30th, not based on anything that has to do with the defendant's conduct, just simply by the fact of when he was sentenced in order to pay restitution. It's also telling the problems with this method by reading the cases in the courts that have adopted it, mainly the Saines case out of the Seventh Circuit. The courts mainly focus on the fact that restitution is a difficult answer to reach, and many of the factors discussed in Paralline are hard to determine, specifically how many are viewing and possessing these images who may never be caught and may never be convicted in order to pay restitution. That kind of thinking gets close to burden shifting, because the problem is if to say the district or the prosecutor only can rely on this equation, that's fine, because these other factors are hard to determine, it's problematic because those are the factors that are likely going to lead to a lower restitution order. And to then say the government doesn't have to prove it because it's difficult to prove, that would put the burden on the defendant to say, no, this makes the restitution award lower and should be taken into consideration. And also here we at least have some indication, there's in the government's Exhibit 1, in the request for restitution, there's a discussion of 500 defendants who have been convicted of possessing or having these images. And that's, so it's here in this case, but it's not taken into account in that $3,000 award. And even the Saines Court noted there are a lot of problems with this one over end method, and it's likely not appropriate in this case. Are there cases or has there evolved sort of a presumptively reasonable amount, do you think? I don't think so, and it's hard to gauge. There haven't been a whole lot of restitution cases out of this circuit, and a lot of times there are district court cases, but they seem to range in the amount from like $500 up to a couple thousand dollars. So that seems to be the general range. And $3,000, even looking at the government spreadsheet, is the higher end of restitution awards, which doesn't make sense in this case, because looking at Paroline and the factors that should be considered, Mr. Borman was only a possessor. He did not distribute the images. He only possessed two videos, and the videos were identical. And he was not involved in the initial production of child pornography. The government instead focuses on one factor. Does the amount of harm to the victim have any bearing on the calculation? That would go into the initial loss amount, I think, and just the big number that started off with the victim's total losses. The focus here is instead on how the defendant's conduct was approximate cause to that harm. So the focus is when we're trying to determine this specific amount. My point is, if there's greater harm to the victim, then the amount that ultimately is attributed to the defendant may increase. Correct. And that's a point I wanted to make. In some of the other cases cited by the government, which kind of illustrates the problem with trying to say, well, $3,000 sounds about right. That's what's usually given in restitution cases. For example, in the Knapp case, one of the cases cited by the government, there's $3,000 awards, $2,500 awards, but the loss amounts in those cases were much higher, between $1,000,000 to $2,000,000. So that's kind of a problem with trying to go with just, this sounds like a reasonable amount because it doesn't kick into account the actual losses and the defendant's specific conduct. If there are no immediate questions, I'd reserve the rest of my time for rebuttal. Thank you, Ms. Quick. Mr. Trimmell, welcome back. May it please the Court, Counsel. Obviously, the restitution is a difficult issue because the numbers, as the courts have said, are difficult to determine with precision. But one of the factors in Paroline was the number of past criminal defendants found to have contributed to the victim's general losses. And so one way to factor in the number of past defendants is to use that as a denominator. And there's no question when there have been fewer defendants convicted in the past, then that denominator is smaller. And then that changes the number that there is, which is why the courts have several factors to consider. And the government did outline these factors in its sentencing memo, supplemental sentencing memo, and also at the sentencing hearing starting on page 22 of the transcript. And we acknowledge that there are some of these factors we didn't have an answer to. We noted that the restitution request had a letter to the attorney that mentioned the number 500. But we didn't have an estimate on the number of future offenders. We didn't have an estimate on the broader number of offenders. And we also emphasized aggravating factors, such as the harm to this victim, as a result of this video, was greater because of the egregious nature of the video. The defense cites the Knapp case. And the Knapp case is a case where there were four different victims, but two of them each had $2,500. And the issue was brought up that one of them had a much different number of prior offenders than the other. And the court acknowledged this and nevertheless provided a $2,500 restitution for both of them. And that is what you are seeing in some of these cases, is that courts are making those adjustments. Now, here, as acknowledged, the district court said it read the briefs to the parties, it listened to the parties' argument, recognized it was a difficult issue, didn't go into a listing of the different factors. But I think when a court hears the positions of both parties and the arguments, it's entitled to presume that it relied and listened to those arguments and considered those in reaching its decision. The disaggregation argument, Paroline didn't resolve the disaggregation issue. And there are two circuits out there, the Ninth and the Tenth and the Galan and the Dunn cases, which have held that because there wasn't a specific disaggregation calculation, that they sent it back. Other courts have looked at that and basically said that's one factor to be considered here. We acknowledge that the court could factor lower it by disaggregation, but then raise it again because of aggravating factors, primarily the nature of the video in this case. So in balancing all these factors together, our main point is the court didn't abuse its discretion and it wasn't out of line in some of the other cases that this court has decided. Beckman case, there were estimates from the formula that came in at $675, $1,624, and the court reached $3,000. Evans, $3,250. Funke, $3,500. Funke did involve distribution, which is part of the reason that that is higher. So this is not wildly out of line. It's very consistent with other cases. And based on this record, the court did not abuse its discretion under Paroline. Briefly, on the 50-year sentence and the allegation of procedural error, when the court used the term reported abuse, and this is of defendants' abuse as a child, it was accurate to say that the defendant did report abuse. His reported abuse was corroborated by other factors for the abuse by his father, but the information in the PSIR regarding his mother was based on his self-report. And so that was accurate. And the court actually said later on in the sentencing, the defendant was victimized by his father and that his parents both went to prison. And so this was considered by the court. There was no procedural error on using the term in terms of his prior abuse, having a cause and effect relationship. That's correct. There was nothing in the record showing that. And we would also emphasize that if being abused as a child causes a person to have sexual interest in children, that is not the same as causing him to decide to take acts out of his free will, which is molest another child, which has produced child pornography, and which is distribute the child pornography that he produced. And there was nothing in the record to show that because of defendant's childhood that somehow that would have compelled that. So the court did not err in discussing that issue. The court also did not plainly err, given its own statement on page 36 of the transcript that he was victimized, the defendant was victimized by his father as a child and his parents went to prison. So the defendant was convicted. The defendant was convicted. The defendant was convicted by 53A. The defendant guideline to 48 before the maximum of 43 is reached. This victim was victimized over almost a one-year period. And we would also note in the record, this is not isolated conduct. He did have threatening behavior towards others as outlined in the pre-sentence report. So based on all the briefly wanted to alert the court, the third issue in this case and the issue to which the government devoted the smallest amount of space was the special condition. We would note that there is another case pending, the Jonathan Siebert case, that's 17-2771, where the same issue on the pornography and erotic condition. With respect to special condition three, why isn't that overbroad when the limitation that the defendant cannot enter any establishment where pornography or erotica may be obtained or viewed, which on its face could be anything from a grocery store to a drug store to an airport. That seems almost on its face to be overbroad. Why should that remain? Well, we would cite in the Schultz case, which we cited and granted that was plain error, that that condition was upheld. Ristine was also a plain error case as well. Plain error here, is it? This is not plain error. Mefford is another case that we cited briefly, but not for this point. That was not a plain error case. I guess the question is, where do you draw the line? How can you enforce that in someone functioning in society? Well, I guess, Your Honor, it depends where you draw the line. This court has drawn the line that alluding to sexual activity is not enough, but sexually stimulating or sexually oriented material is enough. But these materials are available, like I said, in the drug store down the street, the newsstand at the airport. It would seem to be a difficult prohibition to keep someone out of places that should be open to the general public. And I don't know, Your Honor, if you have a store and one section of the store has nudity. Nudity is already by the circuit been determined not to be enough. If that section of the store had pornography, then the court is right. Then the defendant would be prohibited from entering into that store because there was pornography there. And I don't have an easy answer as to how much of the store's content would have to be pornography. Well, wouldn't that be a problem? How will the probation office enforce this? And I don't have an answer because that issue hasn't come up. For example, if someone went into a store where there was pornographic materials being sold, but also non-pornographic materials being sold. Well, how about Judge Smith's suggestion? Airports. I mean, you walk past any of the newsstands, you can find magazines. So then the question, Your Honor, would be what an establishment is. And if you, I think part of that would be as if you're in an airport and you walk into one carol in an airport, there could be a knowledge issue as to whether you know it's a, Your Honor, I see my time has expired. May I finish my sentence? I don't know if you walk into an airport and you're not familiar with the location and you don't know there's pornography there, whether the government would be able to establish a violation. I would be very shocked if the government would ever try to establish a violation based on those facts. But your point, Your Honor, is granted that I don't know. An airport is different from a Walmart, but there's different distinctions on different establishments. I don't have an easy answer for that. Well, why wouldn't the condition at a minimum say, like we used to put on alcohol conditions, you couldn't be in an establishment where the primary source of income is from alcohol. So you could go to a restaurant that might sell drinks, but you couldn't go to a bar where you, why not at least just say where the primary source of income is from the sale of pornographic materials. Then you can at least, if what you're getting at is the stores along the interstate where you see the big billboards, why not say primary source of income? And that would narrow it further than the way it is now, or a substantial source of income. You're right, Judge, that would narrow it. Thank you, Your Honor. Ms. Quick, your rebuttal. I'll give you an extra minute. I think I kind of got into some of your time. That's okay. I'll start by picking up where I was just left off in Special Condition 3. What it's telling is looking at prior conditions that have previously been upheld by this court that are similar to this one. And it's difficult to keep up because it seems like these conditions are tweaked slightly every time I turn around. But in the Muhlenberg case, there was a condition that prohibited a defendant from viewing or possessing pornography or sexually oriented material or entering establishments where pornography, erotica, or adult entertainment is the primary product. Here, all of those qualifiers and the narrowing language is not present. It doesn't require it to be the primary product. And it also does not have that extra clarification of adult entertainment. Instead, it is just simply pornography or erotica. Erotica makes pornography, which is a vague term, an overbroad term in and of itself, even more broad and more vague. Because the definition of erotica itself is something like that, which doesn't need to be a picture. It could be a song. It could be a book. It's overbroad. And it doesn't go to the factors of what we attempt to do with these special conditions of supervised release. So there's no case law on point because these do change. The case law would indicate that this is overbroad and much broader than the prior conditions. I want to briefly address, going back to restitution, the idea that other factors were discussed. There's a listing of the other factors after this equation is put forward and that 2800 roughly number is reached, but it doesn't factor into the number at all. And what's telling is looking at the government's brief, page 40 foot note seven, when discussing two of the factors that the defense points to as mitigating possession, possession only, and a small number of videos, the government says, well, if they were aggravating, that would matter. But the fact that they're not present means nothing. And that's the exact opposite of what the U.S. Supreme Court said in Paroline, that someone who is like Mr. Boardman should have a lesser restitution amount. If there are no further questions, we would just ask that this court reverse and remand for hearing. Thank you. Thank you, Ms. Quick. Thank you also, Mr. Trimmel. Court wishes to thank you both for your argument this morning and the briefing you submitted. We will take the case under advisement.